```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JULIA JOHNSON and DJM,

                    Plaintiffs,           MEMORANDUM & ORDER
                                          10-CV-1964(JS)(WDW)
     -against-

EDDIE JAMES MYERS, JR.; DONNA GUARTON,
Psychologist; BENJAMIN MALEWICZ; JODY
WEITZMAN-FISHER; P.O. PATTERSON,
Shield No. 658, 1st Precinct Command;
ROBERT BARRIS, M.D.; DR. G. ST. VICTOR;
NASSAU COUNTY BALDWIN, U.F.S.D.; ARTHUR
A. GIANELLA, President/CEO Nassau
University Medical Center; JOHN CIAPOLI,
Nassau County Attorney; JUSTICE KAREN
MURPHY, Nassau County Supreme Court;
CYRUS R. VANCE, JR., New York County
District Attorney;

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:          Julia Johnson, pro se
                         942 Wallace Avenue
                         Baldwin, NY 11510

For Defendants:
Eddie James Myers, Jr.   Danielle J. Seid, Esq.
                         Lance D. Simon, Esq.
                         Law Offices of Anthony A. Capetola
                         Two Hillside Avenue, Building C
                         Williston Park, NY 11596

Guarton and Nassau       Lewis R. Silverman, Esq.
County Baldwin,          Christopher James Soverow, Esq.
U.F.S.D.                 Rutherford & Christie, LLP
                         369 Lexington Avenue
                         New York, NY 10017

Malewicz, Weitzman-      Pablo A. Fernandez, Esq.
Fisher, Patterson,       Liora M. Ben-Sorek, Esq.
and Ciapoli              Nassau County Attorney's Office
                         One West Street
                         Mineola, NY 11501
```

| | |
|---|---|
| Barris, St. Victor, and Gianella | Roger B. Lawrence, Esq.<br>Lawrence, Worden & Rainis, P.C.<br>225 Broad Hollow Road, Suite 105E<br>Melville, NY 11747 |
| Cyrus R. Vance, Jr. | Rebecca Rachel Hirschklau, Esq.<br>New York City Law Department<br>100 Church Street, Room 2-183<br>New York, NY 10003 |
| Justice Karen Murphy | No appearances. |

SEYBERT, District Judge:

Plaintiff Julia Johnson commenced this action pro se on behalf of herself and her infant son DJM (collectively "Plaintiffs") against DJM's father, Eddie James Myers, Jr.; Donna Guarton and Nassau County Baldwin U.F.S.D. (the "School District Defendants"); Benjamin Malewicz, Jody Weitzman-Fisher, Police Officer Patterson and John Ciapoli (the "Law Enforcement Defendants"); Dr. Robert Barris, Dr. G. St. Victor and Arthur A. Gianella (the "NUMC Defendants"), New York County District Attorney Cyrus R. Vance, Jr., and Nassau County Supreme Court Justice Karen Murphy. Presently pending before the Court is the NUMC Defendants' motion for summary judgment. For the reasons that follow, the NUMC Defendants' motion is GRANTED.

BACKGROUND

I.  Factual Background[1]

On or about August 20, 2008, Ms. Johnson was admitted to Nassau University Medical Center's ("NUMC") Psychiatric Unit. She was referred for a psychiatric evaluation by Child Protective Services ("CPS") and by Mr. Myers after CPS received an anonymous complaint from Brookside Elementary School concerning the possible neglect of DJM. Upon arrival at the hospital, Drs. Karine Grigoryants and Jagjeet Singh, staff psychiatrists at NUMC, examined Ms. Johnson and diagnosed her with psychosis, not otherwise specified, rule out delusional disorder and executed an application for involuntary admission pursuant to New York Mental Hygiene Law § 9.37(a).[2] She was

---

[1] Although the NUMC Defendants provided Plaintiffs with the required notice to pro se litigants opposing motions for summary judgment, see Local Civil Rule 56.2, Plaintiffs did not serve a Local Civil Rule 56.1 counter-statement. The Court therefore takes as true the facts contained in the NUMC Defendants' Local Rule 56.1 Statement that are supported by admissible evidence. See Local Civ. R. 56.1(c); Baker v. Dorfman, 239 F.3d 415, 422 (2d Cir. 2000); Marshall v. Marshall, No. 08-CV-1420, 2010 WL 5477753, at *1 n.1 (E.D.N.Y. Dec. 7, 2010) (Report and Recommendation), adopted by 2010 WL 5477152 (E.D.N.Y. Dec. 30, 2010).

[2] New York Mental Hygiene Law § 9.37 permits:

> [t]he director of a hospital, upon application by a director of community services or an examining physician duly designated by him or her, [to] receive and care for in such hospital as a patient any person who, in the opinion of the director

deemed a danger to herself and others--she presented as extremely paranoid, guarded, anxious and suspicious, she believed that the police were monitoring her through her burglar alarm system, she reported that she locked herself and her son in her son's bedroom in the middle of the night and made him push a heavy desk against the door because she was afraid of Mr. Myers, and she had on a prior occasion attempted suicide.

On August 21, 2011, Defendant Dr. St. Victor examined Ms. Johnson and diagnosed her with rule out delusional disorder and schizophrenia, paranoid type. Dr. St. Victor completed and executed a certificate stating that Ms. Johnson was in need of involuntary care pursuant to New York Mental Hygiene Law § 9.37(a).[3] She observed Ms. Johnson to be suspicious and paranoid, and she exhibited poor judgment. For example, she was advised that she had a urinary tract infection but refused to take any medication to treat it and she refused to sign a

---

of community services or the director's designee, has a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others.

Upon arrival at the hospital, the need for immediate hospitalization must be confirmed by a staff physician prior to admission. N.Y. MENTAL HYG. LAW § 9.37(a).

[3] A patient may not be involuntarily retained beyond seventy-two hours unless an additional staff physician certifies the need for retention. N.Y. MENTAL HYG. LAW § 9.37(a).

4

release to allow NUMC to obtain information from her prior doctors regarding her psychiatric condition. Dr. St. Victor prescribed Risperdal, an antipsychotic medication, but Ms. Johnson refused to take it. She was discharged by Dr. St. Victor on September 2, 2008 because, despite a noticeable degree of suspiciousness, she was no longer believed to be a danger to herself or others. Ms. Johnson advised Dr. St. Victor that she would not pursue any mental health follow-up treatment nor was she willing to participate in her discharge planning.

On or about October 8, 2008, Ms. Johnson again was admitted involuntarily to NUMC's Psychiatric Unit after CPS expressed concern regarding her ability to care for her son. She was examined by two psychiatrists in the emergency room-- Drs. Franz Hinojosa and Josephine Dellarosa--who both diagnosed her with delusional disorder and rule out psychosis. Ms. Johnson was hostile, evasive and guarded with the doctors and staff. Defendant Dr. Robert Barris examined her on October 10, 2008, but she refused to speak to him. She was extremely paranoid and refused to take the Risperdal prescribed to decrease her paranoia. Ms. Johnson continued to exhibit paranoid delusions and refused to take any antipsychotic medication, so on October 31, 2008[4] NUMC filed a petition in the

---

[4] New York Mental Hygiene Law §§ 9.27, 9.39 provide that a patient can be retained involuntarily for treatment beyond

5

Supreme Court in Nassau County seeking permission to involuntarily treat Ms. Johnson with antipsychotic medication. Ms. Johnson opposed the petition at a hearing on November 6, 2008 before Defendant Justice Murphy where she was represented by counsel. That same day Justice Murphy issued an order allowing the administration of antipsychotic medications. Thereafter, Ms. Johnson began taking the prescribed medications, although on a few occasions she did not swallow the pills until she was asked to open her mouth. She was discharged on December 4, 2008 when her delusions and paranoia subsided significantly.

## II. Procedural Background

Plaintiffs commenced this action pro se on April 23, 2010. (Docket Entry 1.) On June 29, 2010, the NUMC Defendants filed Answers to the Complaint (Docket Entries 18-20), and on August 30, 2010, the Law Enforcement Defendants filed their Answer (Docket Entry 39). The School District Defendants, Mr. Vance, and Mr. Myers all filed motions to dismiss (Docket Entries 26, 46, 64), which were granted in part and denied in part by this Court on February 23, 2011 (Docket Entry 77). All claims against the School District Defendants and Mr. Vance were dismissed with prejudice, and the only claim against Mr. Myers that survived the motion to dismiss was Plaintiffs' defamation

---

fifteen days only if two physicians certify that the patient is "alleged to be mentally ill and in need of involuntary care and treatment."

6

claim. Mr. Myers filed his Answer to the remaining claim against him on June 1, 2011. (Docket Entry 96.) Justice Murphy has yet to make an appearance in this action.

Pending before the Court is the NUMC Defendants' motion for summary judgment. (Docket Entry 90.) The Court notes that no formal discovery has occurred to date.

## DISCUSSION

### I. Ms. Johnson's Representation of DJM

Before turning to the merits of the NUMC Defendants' summary judgment motion, the Court must first address Ms. Johnson's attempt to represent her infant son pro se. Although "an individual generally has the right to proceed pro se with respect to his own claims or claims against him personally," Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 132 (2d Cir. 2009), "a person may not appear on another person's behalf in the other's cause." Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998). The Second Circuit has repeatedly held that this bars parents from representing their minor children pro se. See, e.g., Cheung v. Youth Orchestra Found. of Buffalo, 906 F.2d 59, 61 (2d Cir. 1990); Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998), overruled on other grounds by Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007). Accordingly, the claims of Plaintiff DJM shall be dismissed without prejudice unless

counsel enters an appearance on his behalf within thirty (30) days of the date of this Order.

II. Motion for Summary Judgment

It is unclear what claims Plaintiffs are asserting against the NUMC Defendants or what relief Plaintiffs are seeking, as the Complaint merely narrates Plaintiffs' version of the facts. However, the Court reads the Complaint very liberally to assert claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and under New York state law for assault, battery, false imprisonment, abuse of process, medical malpractice, and intentional infliction of emotional distress.

A. Standard of Review

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortg. Corp. (In re Blackwood Assocs., L.P.), 153 F.3d 61, 67 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary

judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). Where, as here, the non-moving is proceeding pro se, the Court should "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)); accord Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not

9

suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact." (citing Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995))).

B.  Constitutional Claims

Plaintiffs' § 1983 claims arise out of: (1) Ms. Johnson's involuntary commitment in NUMC's psychiatric unit from August 20 to September 3, 2008 and from October 8 to December 5, 2008 and (2) Defendants' forcibly administering antipsychotic drugs to Ms. Johnson during her second hospitalization. The Court will address the claims arising out of each incident separately.

1.  Involuntary Commitment

With respect to the claims arising out of Ms. Johnson's involuntary commitment, Plaintiffs' Complaint, liberally construed, asserts violations of due process and the Fourth Amendment's prohibition against unreasonable seizures. The NUMC Defendants argue that they are shielded from liability by the doctrine of qualified immunity. The Court agrees.

"Under qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Faghri v. Univ.

of Conn., 621 F.3d 92, 96 (2d Cir. 2010) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "[Q]ualified immunity is available as a matter of law when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their actions did not violate clearly established rights." Defore v. Premore, 86 F.3d 48, 50 (2d Cir. 1996).

The NUMC Defendants do not dispute that the constitutional rights at issue here were clearly established. Rather, they argue that they are entitled to qualified immunity because it was objectively reasonable for them to believe that their decision to involuntarily commit Ms. Johnson was lawful. Therefore, the Court's analysis will focus on the objective legal reasonableness of the NUMC Defendants' actions under the due process clause and the Fourth Amendment.

    a. Due Process

The Second Circuit has held that New York's overall statutory scheme governing involuntary commitments "meet[s] the minimum facial requirements of due process--both substantive and procedural." Project Release v. Prevost, 722 F.2d 960, 971 (2d Cir. 1983) (construing N.Y. MENTAL HYG. LAW §§ 9.27, 9.37, 9.39); see also Olivier v. Robert L. Yeager Mental Health Ctr., 398 F.3d 183, 188 (2d Cir. 2005). Additionally, the Supreme Court has held that "a State cannot constitutionally confine without

11

more a nondangerous individual who is capable of surviving in freedom by himself or with the help of willing and responsible family members," O'Connor v. Donaldson, 422 U.S. 563, 576, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975), and New York's Mental Hygiene Law has been interpreted to require a finding of dangerousness prior to involuntary commitment, see Project Release, 722 F.2d at 973-74; see also Glass v. Mayas, 984 F.2d 55, 57 (2d Cir. 1993).

It is undisputed that the NUMC Defendants complied with the procedures set forth in the Mental Hygiene Law.[5] Therefore, "the availability of qualified immunity turns on whether it was objectively reasonable for the defendants to believe, at the time they examined [Ms. Johnson] and in light of the information that they possessed, that [Ms. Johnson] was dangerous." Glass, 984 F.2d at 57; see also Mawhirt v. Ahmed, 8 Fed. Appx. 125, 127 (2d Cir. 2001). The Court believes that it was. With respect to the first hospitalization, the treating psychiatrists observed Ms. Johnson to be extremely paranoid and suspicious. The paranoia was affecting her son: she woke him

---

[5] Pursuant to New York Mental Hygiene Law § 9.37, upon being admitted the NUMC on each occasion, an application for involuntary admission was executed by two doctors who were in agreement that she was suffering from paranoid delusions and was deemed to be a danger to herself and her son. Also, on both occasions, a third doctor examined her within seventy-two hours of being admitted and confirmed her diagnosis and need for involuntary commitment.

up in the middle of the night, locked them in his bedroom, and made him move a heavy desk to block the door. They also knew that she had a history of mental illness and had attempted suicide in the past. Similarly, with respect to the second hospitalization, Ms. Johnson again showed signs of schizophrenia, including being hostile and evasive with NUMC doctors and staff. She exhibited an inability to take care of herself in that she refused treatment for a diagnosed urinary tract infection, and she expressed a total lack of understanding of CPS's concerns for DJM's safety. Accordingly, the NUMC Defendants are shielded by the doctrine of qualified immunity and are entitled to summary judgment with respect to the § 1983 claims arising out of Ms. Johnson's involuntary hospitalizations.

    b. Fourth Amendment

Qualified immunity also shields the NUMC Defendants from liability for violating the Fourth Amendment's prohibition against unreasonable seizures. "The Fourth Amendment requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" Glass, 984 F.2d at 58 (quoting Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1993)). The Second Circuit has held that "[t]he standard for qualified

immunity in the Fourth Amendment context is objective reasonableness." Glass, 984 F.2d at 58 (citing Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1988)); see also Kraft v. N.Y.C., 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010) (finding that qualified immunity shielded the defendant doctors from liability for violating the Fourth Amendment because they "had probable cause and reasonable grounds for believing that plaintiff was subject to seizure under the [Mental Hygiene Law]."). The Court has already established that the NUMC Defendants' involuntary commitment of Ms. Johnson was objectively reasonable in the due process context, it follows that their actions were also objectively reasonable in the Fourth Amendment context. Therefore, all § 1983 claims arising out of Ms. Johnson's involuntary hospitalizations are barred by the doctrine of qualified immunity.

2. Unwanted Administration of Antipsychotic Drugs

The NUMC Defendants argue that Plaintiffs' § 1983 claims arising out of their involuntary administration of antipsychotic drugs are barred by the Nassau County Supreme Court's Order authorizing NUMC to administer the medication to Ms. Johnson over her objection. The Court agrees. "A valid, binding, and enforceable court order obtained and issued in accordance with the Mental Hygiene Law precludes relitigation of

14

the issues determined therein in a later action to recover damages." Porter v. Westchester Cnty. Med. Ctr., 252 A.D.2d 518, 519, 675 N.Y.S.2d 364, 365 (2d Dep't 1998) (citing Kulak v. N.Y.C., 88 F.3d 63, 71-72 (2d Cir. 1996)); see also Harvey v. Sawyer, No. 09-CV-0598, 2010 WL 3323665, at *4-5 (N.D.N.Y. July 22, 2010). Plaintiffs do not dispute that the Order was obtained in accordance with the procedures prescribed in the Mental Hygiene Law--Ms. Johnson had the opportunity to challenge the proposed treatment at a hearing where she was represented by counsel. Plaintiffs are not permitted to relitigate the issues heard and decided by the state court in this forum. Thus, the Court grants summary judgment in favor of the NUMC Defendants.[6]

C. State Tort Law Claims

The NUMC Defendants assert that Plaintiffs' state law claims must be dismissed as time-barred and for failure to serve

---

[6] The Court also finds that the NUMC Defendants are entitled to qualified immunity with respect to the claims arising out of Ms. Johnson's involuntary medication. See Fisk v. Letterman, 501 F. Supp. 2d 505, 525 (S.D.N.Y. 2007) (holding that defendant doctors were shielded from liability for claims arising out of their decision to medicate plaintiff against her will because plaintiff's right to avoid unwanted treatment is not clearly established: "[N]either the Supreme Court nor the Second Circuit has defined the circumstances under which forcible medication of an involuntarily committed patient is prohibited." (quoting Graves v. MidHudson, No. 04-CV-3957, 2006 WL 3103293, at *6 (E.D.N.Y. Nov. 2, 2006))).

15

a notice of claim under New York General Obligations Law §§ 50-i, 50-e.[7]  The Court agrees.

The applicable statute of limitations for tort claims against a municipality or its employees in New York is "one year and ninety days after the happening of the event upon which the claim is based."  N.Y. GEN. MUN. LAW § 50-i(1)(c); see also Bosone v. Cnty. of Suffolk, 274 A.D.2d 532, 533, 712 N.Y.S.2d 128, 131 (2d Dep't 2000) ("Causes of action to recover damages for intentional torts committed by municipal defendants . . . must be commenced within the one-year and 90-day period contained in General Municipal Law § 50-i . . . ."); Castelli v. Nassau Cnty. Med. Ctr., 244 A.D.2d 379, 379, 664 N.Y.S.2d 94, 95 (2d Dep't 1997) (upholding dismissal of medical malpractice claim against NUMC and plaintiff's treating physician as time-barred under General Municipal Law § 50-i).  Here, Plaintiffs' tort claims against the NUMC Defendants all arise out of Ms. Johnson's hospitalization in NUMC's psychiatric unit from August 20 to September 3, 2008 and from October 8 to December 5, 2008.  Thus, Plaintiffs' causes of action accrued, at the latest, on December 5, 2008.  Since Plaintiffs did not file their Complaint until April 23, 2010, nearly seven weeks beyond the one-year and ninety day limitations period, these claims are time-barred.

---

[7] The Court notes that these sections of the General Municipal Law apply to claims against employees of NUMC pursuant to New York Public Authorities Law § 3415.

16

Additionally, Plaintiffs failed to comply with New York General Municipal Law § 50-e, which requires a plaintiff to file a notice of claim prior to commencing an action in tort against a municipality or one of its employees but no more than ninety days after the cause of action accrued. See N.Y. Gen. Mun. Law §§ 50-e, 50-i; cf. Warner v. Vill. of Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in federal civil rights actions." (citation omitted)). Here, Plaintiffs never filed a notice of claim, nor did they ever request an extension of time to do so. As such, Plaintiffs' state law claims against the NUMC Defendants must be dismissed. See Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 61-62, 484 N.Y.S.2d 533, 535, 473 N.E.2d 761, 763 (1984) ("Failure to comply with provisions requiring notice and presentment of claims prior to commencement of litigation ordinarily requires dismissal." (citation omitted)).

Accordingly, the Court GRANTS summary judgment with respect to Plaintiffs' state law claims against the NUMC Defendants.

## CONCLUSION

For the foregoing reasons, the NUMC Defendants' motion for summary judgment is GRANTED, and the Clerk of the Court is directed to terminate Dr. Robert Barris, Dr. G. St. Victor and

17

Arthur A. Gianella as Defendants in this action. Additionally, unless counsel makes an appearance on behalf of DJM within thirty (30) days of the date of this Order, his claims will be dismissed by the Court sua sponte without prejudice.

Counsel for the NUMC Defendants is ORDERED to serve a copy of this Memorandum and Order on the pro se Plaintiffs and to file proof of service within seven (7) days of the date of this Order.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   December   6  , 2011
         Central Islip, NY